**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JULIE WATSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-23-1636** |
| **SECOND BITE FOODS, *et al.*,** | * | |
| **Defendants.** | * | |

**<u>MEMORANDUM OPINION</u>**

Julie Watson filed suit against Second Bite Foods, Inc. ("Second Bite") and Smirk's Ltd. ("Smirk's") in the Circuit Court for Montgomery County, Maryland, alleging that she was hospitalized multiple times after eating a frozen food product whose ingredients the defendants supplied to Daily Harvest, Inc. ("Daily Harvest"), a meal subscription service to which Watson subscribed. *Id.* Smirk's removed the case to this court, ECF 1, and has moved to transfer the case under 28 U.S.C. § 1404(a) to the Southern District of New York, ECF 10. The motion to transfer is fully briefed. ECF 10-1, 15, 16. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants the motion to transfer.

## I.    Background

These are the facts as Watson alleges them. Sometime before May 2022, Watson subscribed to meal-delivery service Daily Harvest. ECF 5, ¶¶ 7, 15. In May, she received a delivery of 14 items that included a dish called "French Lentil + Leek Crumbles." *Id.* ¶ 15. On May 14, she ate some of that meal. *Id.* ¶ 16. In the days that followed, she began experiencing gastrointestinal problems that worsened until she required hospitalization. *Id.* ¶¶ 17–20. She spent four days at Suburban Hospital suffering severe gastrointestinal pain, which doctors there diagnosed as hepatitis due to her elevated liver enzymes. *Id.* ¶ 21. Between June 11 and 12,

Watson ate the rest of the dish, which prompted her symptoms to return and led her to go to a hospital once again. *Id.* ¶ 22.  At Sibley Memorial Hospital, a radiological scan revealed that she had a liver infarction. *Id.* ¶ 23.

On May 4, 2023, Watson filed a complaint against the defendants in the Circuit Court for Montgomery County, Maryland, asserting that Smirk's supplied tara flour to Second Bite, which in turn used that tara flour in the production of the "French Lentil + Leek Crumbles" that caused her illness.  ECF 5, ¶¶ 7–8.  Watson brings counts for strict liability, breach of express and implied warranties, negligence, failure to warn, and a violation of the Maryland Consumer Protection Act. ECF 5, ¶¶ 25–51.  After removing the case to this court, ECF 1, Smirk's moved for a transfer to the Southern District of New York, ECF 10, where dozens of related cases are pending, ECF 10-1, at 4–7.

## II.    Standard of Review

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir. 1993).  The moving party bears the burden of showing by a preponderance of the evidence that a transfer is proper.  *See Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002).  "District courts within [the Fourth Circuit] consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015).

In briefing, the parties apply a different standard to the motion to transfer: the standard for a motion to transfer under the doctrine of *forum non conveniens*.  ECF 10-1, at 9–11; ECF 15, at

8.  To be sure, the Supreme Court has "suggested the traditional analysis under both § 1404(a) and *forum non conveniens* (where no forum selection clauses are at issue) is similar." *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 n.6 (4th Cir. 2018) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 & 62 n.6 (2013)).  But the analysis is not the same.  "The common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad," save for rare exceptions inapplicable here.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430 (2007) (alteration in *Sinochem*) (citing Charles Alan Wright, *et al.*, 14D Fed. Prac. & Proc. Juris. § 3828 (3d ed. 2007)).  In the Fourth Circuit, the four-factor *Plumbers and Pipefitters* standard governs § 1404(a) motions.  *See, e.g.*, *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 534 (D. Md. 2019).  Accordingly, that is the standard this Court will apply.

## III.    Discussion

### A.    Subject Matter Jurisdiction, Personal Jurisdiction, and Venue

As a threshold matter, the Court finds that the Southern District of New York is a district "where [this case] might have been brought."  *See* 28 U.S.C. § 1404(a); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).  That court would have had subject matter jurisdiction on the same basis that this Court does: The parties are completely diverse and the amount in controversy exceeds $75,000.  ECF 5, ¶¶ 1–3, 54; 28 U.S.C. § 1332(a).  And the parties do not dispute that venue would be proper in the Southern District of New York.  ECF 10-1, at 17–18; ECF 15 at 8–9; ECF 16, at 4.  The key question, then, is whether the Southern District of New York would have had personal jurisdiction over the defendants.  A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).  "[F]or a district

court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Under New York's long-arm statute, "[a]s to a cause of action arising from any of the acts enumerated in [§ 302(a)], a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).

This case meets both the statutory and constitutional requirements. The action arises from the defendants' contracts with Daily Harvest, whose principal place of business is in New York, to make and supply ingredients to Daily Harvest in New York. *See* ECF 10-4, at 3–4; Decl. of Nicholas Beyer, Exhibit G, *Pearson v. Daily Harvest, Inc.*, No. 3:22-cv-01563-YY (D. Or.).[1] That satisfies the requirements for specific jurisdiction under New York's long-arm statute. *See D'Ambola v. Daily Harvest, Inc.*, No. 22cv6316 (EP) (ESK), 2023 WL 3720888, at *3 (D.N.J. May 30, 2023); *Pearson v. Daily Harvest, Inc.*, No. 3:22-cv-1563-YY, 2023 WL 2911785, at *2–3 (D. Or. Apr. 12, 2023). The due process requirements are satisfied too. "[P]roof of one

---

[1] The Court takes judicial notice of the contract between Daily Harvest and Smirk's. Under Federal Rule of Evidence 201, a court may "judicially notice a fact that is not subject to reasonable dispute because it is generally known . . . or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). That includes public documents. *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (citation omitted). Under "appropriate circumstances, [a court] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quotation omitted). In briefing, Smirk's cites its contract to supply ingredients to Daily Harvest in New York as Exhibit 3 to its motion to transfer. ECF 10-1, at 16. However, Smirk's did not include that contract; its third exhibit is Second Bite's contract with Daily Harvest. ECF 10-4. To remedy that defect, the Court takes up Smirk's' request to consult the docket in *Pearson v. Daily Harvest, Inc.*, No. 3:22-cv-1563-YY. ECF 10-1, at 7 n.2; ECF 16, at 4–5.

transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [t]here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Jones v. Cosmetic Surgery Int'l, Inc.*, No. DKC-07-1871, 2008 WL 11509719, at *2 (D. Md. June 6, 2008) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)).  By transacting to supply the allegedly contaminated ingredients for Daily Harvest, the defendants "purposefully directed [their] activities at the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (cleaned up). Because the statutory and constitutional requirements would have been met, the Southern District of New York would have had personal jurisdiction over the defendants.

### B. The Transfer Factors

Having found that Watson might have brought this case in New York, the Court next considers the four transfer factors.  First, the Court gives considerable weight to Watson's choice to bring her case in Maryland.  "As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Plumbers & Pipefitters*, 791 F.3d at 444 (quotation omitted).  "Although this weight is 'significantly lessened' where the 'forum has no connection with the matter in controversy,' that is not the case here." *See Rojas*, 425 F. Supp. 3d at 535 (quoting *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)). Watson chose to file her complaint in Maryland.  ECF 5.  Not only is Maryland the state in which she resides, *id.* ¶ 1, Maryland is also the state in which she alleges she suffered the serious health

consequences of the defendants' contaminated food ingredients, *id.* ¶ 20.   Accordingly, the first factor weighs against transfer.

Second, the witness convenience factor is neutral.   On one hand, Watson's healthcare providers and her family—witnesses to her injuries—are in Maryland.   ECF 15, 10–11.   On the other hand, the possibility that this case would be consolidated with related cases in New York tilts the witness convenience factor towards transfer, even if only a subset of witnesses—like the defendants' employees and any witnesses from Daily Harvest, ECF 10, at 20–21—would benefit from consolidation.   *See D2L Ltd.*, 671 F. Supp. 2d at 780, 783.   Each party asserts that the other's witnesses could transmit discoverable evidence to the other jurisdiction electronically.   ECF 15, at 11; ECF 16, at 5–6.   These arguments cancel one another out.

Third, the convenience of the parties is neutral as well.   On one hand, it would be significantly more convenient for Watson to litigate in her home state.   On the other, it would be more convenient for the defendants to litigate in the district where they already are litigating.   In isolation, this factor might weigh slightly in the plaintiff's favor; after all, neither defendant actually is located in New York.   But once again, the inconvenience to Watson "is offset by the potential for consolidation and the advantages that could result even without consolidation."   *See D2L Ltd.*, 671 F. Supp. 2d at 783.

Fourth, a transfer to the Southern District of New York would be in the interest of justice. "'The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum,' because the presence of 'two suits in different circuits involving a number of identical questions of fact and law would result in a useless waste of judicial time and energy.'" *Rojas*, 425 F. Supp. 3d at 535 (quoting *D2L Ltd.*, 671 F. Supp. 2d at 783, and then quoting *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 368 (4th Cir. 1967)).   Here, not only is one case

against these two defendants concerning personal injuries from the same contaminated food product pending in the Southern District of New York—57 are.  ECF 10-1, at 5.

### C.  Watson's Counterarguments

Watson's three counterarguments do not tip the scales on this factor against transfer.

Her first and second points are intertwined.  First, Watson argues that the interest of justice favors denying the motion to transfer because if Daily Harvest—the company that sold Watson the food—is joined to this action, Maryland law would control the question of whether Daily Harvest may enforce its arbitration agreement against Watson, and under Maryland law, unlike New York law, the agreement would be unenforceable.  ECF 15, at 11–12.  Second, she contends that for that reason, transfer would congest the Southern District of New York with choice of law questions and leave her litigating her case while the related cases proceed in arbitration.  *Id.* at 12–13.

These arguments are unconvincing.  There is no reason to conclude that the choice of law questions this case might present would be any harder than those federal courts handle every day.  And if Watson's case proceeds in litigation rather than in arbitration, it appears that it will not be alone.  The Southern District of New York's orders in the related cases contemplate parallel arbitration and litigation.  ECF 16-1, at 1–2.  Even if Watson is right that transfer may not expedite pretrial (or pre-arbitration) proceedings as much as transfer might in other cases, pretrial efficiency is not the sole reason transfer is in the interest of justice when related litigation is pending elsewhere.  "Transfer is favored not only because litigation of related claims in the same tribunal may facilitate efficient pretrial proceedings and discovery but also because it avoids inconsistent results."  *D2L*, 671 F. Supp. 2d at 783.  There is also "[t]he transferee court's familiarity with the facts of the case and the applicable law," which "promotes judicial economy."  *Id.* at 784.  For

those reasons, "[t]ransfer is favored even if it is uncertain whether the transferred case will be consolidated with the related pending case." *Id.* at 783.

Third, Watson argues that the interest of justice favors denying the motion to transfer because Maryland has a greater interest in the resolution of this case than New York. ECF 15, at 13–14. That is relevant. *See Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D. Md. 2002). But even if it is true, Watson cites no case suggesting that this factor may overcome the heavy weight in favor of transfer created by the related actions in the transferee forum. All told, the interest of justice strongly supports a transfer to the Southern District of New York.

### D. Balancing

Weighing these factors carefully, the Court concludes that they support granting the motion to transfer. Watson's choice to file in Maryland is entitled to deference. And the defendants bear the burden of justifying transfer. But the fact that so many related cases are proceeding in the Southern District of New York weighs heavily in favor of transfer. *See D2L*, 671 F. Supp. 2d at 784.

## IV. Conclusion

For these reasons, the motion to transfer the case to the Southern District of New York, ECF 10, is granted. A separate order follows.

Date: November 13, 2023

Deborah L. Boardman
United States District Judge